This case is United States v. Smith. Good morning. May I please the court? Attorney Michael Roy. I will call you when we are ready. Mr. Roy. Thank you, Judge. Good morning. May it please the court? Opposing counsel, Attorney Michael Roy on behalf of Appellant Defendant Jason Smith. This court should vacate Smith's revocation judgment and remand with instructions to hold a jury trial and the alternative, it should vacate for the district court's failure to comply with Rule 32.1. I know that this appeal and the following case this court is going to hear is a big ask for this court. We are asking for a lot. This court has repeatedly held that the Sixth Amendment does not apply to revocation proceedings. But our appeal, at least on the jury right issue, really comes down to two questions. The first is on the merits, does the Sixth Amendment apply to revocations of supervised release? And then the second and I think maybe the more difficult question is, is this court even able to decide that question or is it gone by circuit precedent to continue following earlier cases saying it does not? So I'd like to start with first whether this court can even hold what we're asking, that the Sixth Amendment applies. And as our opening brief points out, going through the head counting in United States v. Hayman, yes, the main opinion is a plurality opinion. Yes, it's a fractured decision. But as Judge Gregory explained in his dissent in United States v. Kauff, you can count the heads, put them together to compile a majority of justices who would abrogate circuit law saying that the Sixth Amendment doesn't apply to revocation proceedings. The clearest is the four justices in Justice Gorsuch's plurality. They directly undercut the presumption of this circuit's case law that Morrissey and Gagnon apply to supervised release revocations. As Justice Gorsuch said, it does not. There's a structural difference between supervised release versus probation or parole. And since that's the underlying precept of this court's precedent going back to United States v. Pratt, that draws into question all of that. The other important thing that I think comes out of Justice Gorsuch's plurality opinion is the holding that, at least in some circumstances, revocation can be part of a criminal proceeding. The Sixth Amendment doesn't apply at all if it's not a criminal proceeding. This court has repeatedly said revocations are not criminal proceedings. Justice Gorsuch said that. And as Justice Gorsuch pointed out in footnote 9 of his opinion, as Judge Gregory pointed out in his dissent in Kauff, Breyer's decision also says that, at least in some circumstances, revocations can be criminal proceedings. Isn't that driven, though, by the interpretation of subsection K, not the subsection we have before us? I agree with you in part. To be sure, as the government points out, Justice Breyer's concurrence is narrow, focused only on subsection K. And the plurality is narrow, too. The holding of the plurality opinion is explicit. They're only deciding subsection K. But that's just judicial best practices. The Supreme Court's faced with a constitutional question. They decide the narrow issue before it. And in terms of the first question, whether this circuit's case law and the precepts underlying the circuit's case law are still good law, the narrow holding about subsection K undercuts this circuit's prior reasoning. Because it says that, at least in some circumstances, revocation can be a criminal proceeding. Once we get past that preliminary issue… Why shouldn't we limit those circumstances to the K-like circumstances, though, and view the 3583E3 situation that we have here and in the next case as the kind of ordinary course that doesn't touch our precedent? In other words, when I look at Justice Breyer's opinion, he seems to set E3 out as kind of a baseline that's appropriate as more kind of ordinary course supervised release. K is the special circumstance. But this isn't a K case. I have a couple of responses to that, Judge. So I think the first question is whether circuit law is still binding. Once we get past that, that's where I would rely more heavily on the plurality opinion alone, on the merits. But the first question, just of whether this reasoning is still valid, I think that Justice Breyer's opinion at least undercuts it to the extent that it says, in some circumstances, revocations can be a criminal proceeding. There's also the other aspect of… Right. And then the devil's in the detail of what those circumstances are. And wouldn't they be K circumstances? I think in Justice Breyer's view, yes. But the other way that Hayman undercuts the circuit's it's focused that you need to look at historical analogs, do a more originalist historical analysis to determine when the Sixth Amendment applies. When Morrissey and Gangnam were decided, as the amici brief points out, the Supreme Court simply wasn't doing the same sort of historical analysis. I mean, those are still obviously good law, but we're in a new era of historical analogs, looking at originalism. And that is a big part of Justice Alito's argument, to some extent. And if we follow the direction that Justice Alito is pointing to of looking towards historical analogs, that's where we get into pointing to recognizance, forfeitures, whether that's a close historical analog to supervision or not. The Schuman article. Exactly, the Schuman article. And I mean, that also goes into our alternative argument, that is, even if circuit law is still binding, we think that there is grounds to reconsider it. Obviously, this panel wouldn't be able to do it itself. But the combination of Hayman... Why not? Sorry, what was that, Judge? Why not? I would say this panel... You know that one panel can overrule another in the Seventh Circuit. I believe I was thinking... Circuit rule 40E. One panel can overrule another. You circulate to the full court. This whole business, can we reexamine our cases? The circuit rules say yes. The question is, should we, not can we? And I think I slightly misspoke. I meant more along the lines of whether this court could do it without circulation. Circulation is not the same as going en banc, but it is a procedure that requires buy-in from the remainder of the court. And... In the interest of time here, Mr. Roy, can you shift over to the Rule 32.1 issue, and in particular what... I think you make a decent point that there may have been an error by the district court in the handling of the November 4th 2020 drug test with respect to, you know, inadequate balancing under the rule. But I must tell you, and you can react to this, I have a very hard time as not seeing that error as harmless in the totality of everything that was before the district court in this revocation sentence. So Matt, why don't you try to talk us through that? Sure, and I'll be candid. Obviously, the new crime allegations were driving the bus, right? The drug violations were not the main point of the revocation hearing, although we do focus on it because I think that's the clearest example of where the court was going astray, both in our Confrontation Clause arguments, which relies on the Sixth Amendment, and on our 32.1B arguments. And it's the combination. I think the bigger issue with the car chase allegations, for lack of a better term, is not whether the court admitted hearsay without doing the test. It clearly didn't do a balancing test before lighting hearsay. It cited hearsay as corroborating Officer Rush's opinion. The harder question is whether that was preserved. And if it wasn't preserved, then is the problems with the drug lab reports harmless? And it's the court's repeated rulings against the defendant on the drug lab reports, when he's repeatedly being faced with hearsay objections over and over. Smith keeps raising the hearsay objections. The court keeps shooting him down. That helps us in our preservation argument, then, for the car chase with Officer Rush. Is the fact that the car chase is a Class B violation and the drug tests are a Class C violation, does that factor in? I assume your argument, Judge Brennan, is whether it would be harmless if the court only found, which there would be a stronger harmlessness argument for the government. It would be harmless in terms of whether revocation itself was appropriate. But the sentence that the court determines for revocation is based on the total package. It's not like the confrontation clause argument where we're arguing about each individual violation before the court gets to the sentencing determination. In terms of relevant conduct for sentencing, Rule 32.1, the balancing test, that applies to all of it. So the government can argue that the court didn't care about the drug violations at all when it was setting the sentence, but the court didn't explicitly say that. No, I think to the contrary. I think that the court was concerned about the substance abuse challenges that he faced. I'm just not so sure that when, if you try to isolate an error, if you even want to think of it as an error, around the November 4th lack of the in-court or remote testimony by the chemist, I just have a hard time seeing that influencing the 21-month sentence. Because he admitted to the other two positive drug tests, and then it was very hard for him to contest that he didn't show up on the one day to do the drug test. And then you throw the high-speed chase in there. I just don't know what the November 4th, I mean, how could it possibly have had an impact? Sure, and our argument would be that even though it is just the November 4th one that really the drug test mattered, it is still evidence towards the other drug violations in that it's showing a pattern of behavior. So it did help the judge make findings on the other contested violations, but then primarily that it created the pattern of rulings by the district court to the extent where once we get to the car chase violation, the court was well aware of what Smith's position was in terms of he wanted to confront witnesses, he wanted to at least have a balancing test. I guess really it was more the judge brought up the balancing test because, I mean, to be frank, Smith's trial attorney I don't think really understood the difference between 32.1 and confrontation clause. But if the court had, on the earlier drug test, been ruling in Smith's favor, it would have changed the nature of the entire proceeding. Once we get to the more serious offenses, I think we would have been seeing more aggressive objections from Smith. I think we would have been seeing different rulings, different presentation from the government. Definitely with the confrontation clause argument, it's sort of binary, where either the whole thing would be looking more like a trial or not. And to a lesser extent, the same is true for Rule 32.1. Unless this court has any further questions, I'll reserve the rest for rebuttal. Thank you. Certainly, Mr. Roy. Mr. Timken. May it please the court. Good morning, Your Honors. Eli Timken for the United States. Your Honors, I'll be happy to talk about the Sixth Amendment argument, but first I'd like to focus in on this particular case and on the specific arguments and pieces of evidence that Mr. Smith challenges on appeal. He challenges three pieces or sets of evidence, but none of those was admitted in error, and even if there had been an error, it would have been harmless because it did not affect the outcome of the proceeding. And that's especially so given that Mr. Smith conceded, violating the conditions of the supervised release. It's useful to go through the three challenges he raises one by one, and I'll start with the lab reports as Judge Scudder asked about specifically as to the November positive test. The applicable test here is Rule 32.1, the applicable standard. Mr. Smith's argument is that the balancing wasn't explicit enough for these drug test reports. He doesn't say that the court's ultimate ruling was wrong in finding these reports reliable and admissible, but he says the district court needed to lay out more clearly what the government's interest was and how it was balancing those factors. Again, this is all in the context of two positive tests where Mr. Smith conceded using drugs, and the lab reports were there also that looked essentially identical to this third lab report. Yeah, I think you have to set aside the drug tests he admitted to. He admitted to them. There's no issue. There's no challenge. Mr. Roy is not arguing about that. You've got to focus on the November 4. Absolutely, Your Honor. So I mentioned those other two, I guess, for a few reasons. One, to get to harmlessness, which I'll talk more about in a second, but second, just looking at the reliability of this November report, the printout from the drug labs essentially identical. But our case, see, this is the problem with your argument. I think you're better off going to harmless error because I don't see how you can argue your way out of a 32.1 violation by going to reliability. I mean, we've said that's not the test. I'll take the invitation to go to harmlessness, and then I'll come back to address your point about reliability. As to harmlessness, there are really two levels of harmlessness here. Most obviously, Mr. Smith conceded two other drug violations, even if it was an error to admit this report, and even if it was error to find a November violation, there's no indication that that affected the sentence at all. Especially these were all grade C violations. Mr. Smith conceded other drug violations, and the guidelines calculation drove the grade B violation, drove the guidelines calculation. The district court commented on that as the most significant violation. So there's no indication that even if the November finding was error that it affected the outcome. But, Mr. Temkin, what's the limiting principle for that? There's an error. The district court acknowledges the balancing, in fact, raises the balancing, but doesn't engage in the balancing. And the Mosley decision says, well, we can do some of the balancing on the appellate level. But at what point, how many errors do there have to be? At some juncture, if the balancing isn't being done, when is the error so embedded that it's going to bleed over into the bottom line? Yes, Your Honor. Mosley sets out a two-level harmlessness analysis. So the first level is, if the district court had been more explicit in laying out the considerations, would it have reached the same outcome? And I'll argue here that it would have. And I'll say more about that in a moment. The second question is, if the ultimate ruling was an error, if this evidence shouldn't have come in, did it affect the outcome of the case? And that's what I was just speaking about with Judge Scudder. As to the first point, whether the evidence would have come in either way, had the district court laid it out more explicitly, here the party's interest and the government's reason for not putting on a lab tech were clear. It's expensive, lab techs are busy, or chemists are busy, and it would be disruptive and expensive to bring someone in for every one of these proceedings. And the district court acknowledged that, albeit a little bit later in the hearing, I believe it's page 34 of the appendix, when it said, chemists are hard to come by, we don't call them out for everything. You mean to fly? Are you talking about to fly the person from Louisiana to Indiana? The district court didn't specify. You could also do remote testimony, like what happened with the probation officer. Yes, Your Honor. If the Sixth Amendment analysis applied, it wouldn't satisfy that. But, yes, the Sixth Amendment analysis doesn't apply, as we argue, and this is court's law and all court's law holds. But, yes, under Rule 32.1, you could do video testimony. It's still not costless. You aren't paying for a flight, certainly, but someone has to take time out of their day. There are a lot of these proceedings. That's at least some reason. So that weighs on one side of the balance. On the other side, reliability. There's just no reason to doubt the reliability of this report. Even on appeal, Mr. Smith doesn't identify any reason to doubt the reliability, and that matters under the Falls case, for example. The Falls case, to your earlier question, Judge Scudder, expressly rejects a per se rule that the district court needs to explicitly lay out the government's reason. Other previous cases have said, certainly, that the court needs to lay out explicitly. Falls rejects that approach. That's the most recent word from this court on it. It's a 2020 case, 960 Federal 3rd, at pin site 445. So, again, this court has most recently rejected the formalist rule that Mr. Smith seeks to rely on. I'd be happy, unless the court has other questions about the November lab report, to talk about the other pieces of evidence. Mr. Smith also challenges the videoconference testimony of his probation officer, Officer Abram-Jones. He concedes that that wasn't a problem under Rule 32.1 or the Fifth Amendment due process analysis, so it could only be a problem under the Sixth Amendment. The Sixth Amendment doesn't apply, as I'll be happy to speak about. Even if there were an error under the Sixth Amendment and it applied, it would also be harmless, again, because this testimony only went to drug violations at the same time that Mr. Smith conceded two other drug violations. There's no indication that these two additional violations changed anything. Next, Mr. Smith also challenges the testimony of Officer Ryan Rush, specifically two pieces of evidence, or two portions of the testimony. The first was identifying Mr. Smith as the driver of the Chevy Malibu, and the second was that the marshals had said there was an arrest warrant for Mr. Smith. Mr. Smith didn't object to either of these pieces of testimony on hearsay or confrontation grounds, and because of that, this court can only review for plain error. He didn't alert the court to the need to conduct this type of balancing, and that's something that the court has noted, for example, in the second United States v. Jordan decision that we cite in the brief, 765 Federal 3rd at Penn Site 788. I believe that's a 2014 case. He didn't alert the court to the need to conduct the balancing. In other instances, when he did raise this kind of objection, the court engaged with it. It either sustained a hearsay objection in Officer Rush's testimony, pages 61 to 62 of the appendix, and it did engage in the balancing when Mr. Smith prompted the court to do so. As to the substance of the evidence identifying Mr. Smith as the driver of the Malibu, under the plain error standard, it wasn't clear hearsay. It's possible it could be construed as hearsay, saying my partner and I confirmed he was the driver. That could be referring to an out-of-court statement from his partner. It could also be saying we both looked, and this is what we saw. Officer Rush testified he was 10 to 15 feet away from the car. I don't see that as hearsay at all. I read that testimony. He said we went to the liquor store. We were sitting in the parking lot. The Malibu pulled in. I looked at it. It was the same guy I saw in the picture. I don't know why that's hearsay. I mean, it's personal identification by a law enforcement officer. Absolutely, Your Honor. And if there's any way you could read it as hearsay, it certainly is not plain hearsay, and so there was not plain error, given that Mr. Smith didn't object. If he had objected, the parties of the court could have clarified it. But this was live. Most importantly, this was live in-person testimony from Officer Rush that he identified Mr. Smith. The testimony about the marshal saying there was a warrant, that's not hearsay. I'm not sure if Mr. Smith is continuing to pursue that argument, but it's not hearsay. All of this ultimately only would have gone to sentencing, again, given that Mr. Smith conceded he had violated the conditions of his supervised release, and under the plain error standard, it didn't substantially affect his rights and didn't present a miscarriage of justice. I have a few minutes remaining. I'll be happy to briefly go through the Sixth Amendment argument, but I know the court has another argument right after mine that presents that issue as well. Unless there are any questions on the specific pieces of evidence, I'll just briefly. I see none. All right. I'll briefly summarize the Sixth Amendment argument, and I'm happy to talk about any of them if the court has any questions. The existing law is clear in this circuit that the Sixth Amendment doesn't apply in supervised release revocation hearing. It's a recent law. It's a well-considered law. It's not just a presumption that this court has taken. No federal court of appeals appears to have adopted Mr. Smith's argument. This court has rejected it, albeit in an unpublished decision in United States v. Stahl, which specifically discusses Haman. The citation for that case is 839 Federal Appendix at page 24. It's non-precedential. Correct. And, therefore, it doesn't have any precedential value. Absolutely. Why bother? Because it's persuasive. It does not carry any precedential value, but this court has engaged with the argument, and even if it were just an article, for example, the reasoning it sets out makes sense. It summarizes Haman. It says Apprendi doesn't apply to a discretionary revocation under Section 3583E3, and it doesn't read Haman broadly to undercut this court's precedent. It also notes, of course, that Justice Breyer's concurrence is the opinion that controls in Haman. Other courts have also rejected this argument that we cite on pages 15 to 16 in footnote 2 of the government's brief. Other courts hold the confrontation clause doesn't apply in a supervised release revocation, and even after Haman, they reach the same conclusion as we cite on page 17 of our brief. Haman, this court's precedent is clear. Haman doesn't open the door to revisit it. It's not that the court couldn't do it, but it would need a good reason, a very good reason, like an on-point intervening Supreme Court decision that abrogates earlier precedent. Haman just doesn't do that. Justice Breyer's opinion is the controlling one. Unquestionably, it's narrow. It doesn't purport to raise any issue with discretionary revocations. If anything, it says that's what's okay. I believe Judge Brennan, you identified that Justice Breyer uses Section 3583E3 as the baseline, as what's ordinary, what's permissible. None of the opinions in Haman would have seen a problem here where this was a discretionary revocation and the combined prison term was within the range authorized by the initial conviction. If the Supreme Court wants to revisit the issue, it can, but the majority of the Supreme Court hasn't abrogated this court's precedent or shown any problem with it. On the historical argument, if the court wanted to wade into it, the historical record and the forthcoming law review article don't support the argument that Mr. Smith lays out. He hasn't shown that recognizance forfeitures are the historical analog for modern supervised release revocations. Recognizances were much broader, used in any number of other contexts, civilly and criminally, pretrial, acquitted defendants, ordering and ensuring that witnesses would appear at trial. They just don't line up. Most importantly, recognizances didn't require the key feature of supervised release, which is an underlying criminal conviction by jury or by guilty plea that authorizes punishment. Mr. Smith also hasn't shown that juries were required for post-conviction recognizance forfeitures. It appears there wasn't a single uniform practice, and to the extent juries were used, there could be other reasons, such as the money at stake, which was ultimately what was at stake in a forfeiture proceeding. But again, the court doesn't need to wade into the historical argument on the Sixth Amendment point. Unless the court has further questions, the government asks that the court affirm the evidentiary questions. Thank you, Mr. Temkin. Thank you. Anything further, Mr. Roy? Yeah. Thank you. I would like to first clarify our argument with the hearsay for the car chase. We're not arguing that Officer Rush saying, I saw him, I can identify him in court. We're not arguing that that's hearsay. We're also not arguing that there was insufficient evidence, especially under a Fifth Amendment preponderance standard. Him saying, I recognize him from when I saw him before, that's sufficient verification. There's no argument there. But there was a debate in the district court, the district court being the one weighing the evidence about whether Rush was reliable, and something that the district court cited in finding Rush reliable was the fact that his partner corroborated his identification. That's the hearsay that we're challenging. I would like to briefly talk about whether, in terms of the Sixth Amendment arguments, the recognizance forfeiture required a jury even in post-conviction recognizances. I'd like to mention that quickly since that's not raised in the following case. It's only the government's argument in this case. As the Schuman article points out, as the amici brief points out, the only exception that can be found in the historical record for the jury requirement is for in-court violations. That's very similar to modern exceptions to the jury right, especially looking at criminal contempt proceedings under Rule 42 where there's an exception to the jury. I have a question about the implications of your argument. Suppose the defendant commits a particular violation of supervised release. Supervised release is revoked, and he's then prosecuted criminally for the same act. In your view, does the Double Jeopardy Clause bar that prosecution? I've not looked into that issue, Judge. I think— I'm trying to figure out whether you are serious about the implications of your argument. Don't you have to answer yes? There would be double jeopardy implications. It would be similar to the original draft of the Sentencing Reform Act, which would have framed all violations of supervised release as criminal contempt proceedings. So perhaps there would be a way for the government to get around double jeopardy by focusing on the elements of criminal contempt versus the elements of the substantive offense. I think it would probably come down to a case-by-case basis. Double jeopardy can be complicated. It often depends a lot on overlapping elements or not. I would be happy to discuss more about the policy arguments in terms of the implications of everything in the next case. For this case, I do— Policy is not a constitutional argument. Not for us. Not for the justices. The question is what does the document say, and what did it mean when it was adopted? Not what's good policy. I'm exactly on the same page, Judge, as you. I'm—I just—I think the implications of what would be the effect of this larger is more of a policy concern than what the document requires. I see that I'm winding down my time. Unless the Court has any specific questions about Smith, I would move on to the next case. Thank you very much. The case is taken under advisement.